# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.J. OLIVER,<br><br>　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>KFC CORPORATION d/b/a KFC STORE #Y450025; PURCELL WEBB, TRUSTEE OF THAT CERTAIN REVOCABLE TRUST DATED NOVEMBER 10, 1982,<br><br>　　　　　　　　　　　Defendants. | CASE NO. 06CV2273 JLS (BLM)<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, (3) DISMISSING FEDERAL CLAIM (4) DECLINING SUPPLEMENTAL JURISDICTION OVER STATE-LAW CLAIMS, and (5) DISMISSING STATE-LAW CLAIMS WITHOUT PREJUDICE**<br><br>(Doc. Nos. 35 & 41) |

　　　A.J. Oliver ("plaintiff"), a wheelchair-bound stroke victim, brings the present action for alleged violations of federal and state disability laws at the Kentucky Fried Chicken restaurant at 1056 13th Street in Imperial Beach. The defendants in the action are the KFC Corporation ("KFC") and Purcell Webb, Trustee of That Certain Revocable Trust Dated November 10, 1982 ("Webb Trust"). The Webb Trust is the landlord for KFC's restaurant in Imperial Beach. (See Webb Trust Reply ISO MSJ, at 2.)

　　　Presently before the Court are cross-motions for summary judgment. Plaintiff moves for summary judgment on three violations of federal and state disability laws which KFC had not

remedied since the filing of the present action.[1] KFC moves for summary judgment on the entirety of plaintiff's federal claim, including the alleged violations which KFC voluntarily remedied, and asks the Court to decline supplemental jurisdiction over the state-law causes of action. The Webb Trust joins in KFC's motion.

## BACKGROUND

In 1993, plaintiff suffered a stroke resulting in paralysis on the right side of his body, very limited vision in his right eye, and an inability to stand upright for more than a short period. (Oliver Decla. ISO MSJ ¶¶ 2-4.) Although plaintiff cannot drive, he possesses a disabled placard issued by the California Department of Vehicles. (Id. ¶ 7.) Plaintiff's current residence is about six-tenths of a mile away from the KFC restaurant at issue. (Id. ¶ 9.) Plaintiff has receipts documenting his visits to the restaurant on August 28, 2006; September 26, 2006; March 13, 2007; March 14, 2007; and April 30, 2007.[2] (Id. ¶ 10.)

On October 10, 2006, plaintiff filed his complaint alleging the existence of various architectural barriers that prevented him from enjoying full and equal access to the restaurant. (Doc. No. 1 ¶ 10.) Plaintiff alleged a federal cause of action under the Americans with Disabilities Act, giving rise to original jurisdiction. (Id. ¶ 3.) Plaintiff alleged state-law causes of action under the Disabled Persons Act, Unruh Civil Rights Act, and denial of full and equal access to facilities—all subject to the Court's supplemental jurisdiction. (Id. ¶ 4.)

KFC answered the complaint on November 13, 2006. (Doc. No. 4.) The Webb Trust answered the complaint on November 14, 2006. (Doc. No. 7.)

Plaintiff filed his present motion for summary judgment on October 1, 2007. (Doc. No. 35.) KFC filed its amended[3] motion for summary judgment on January 4, 2008. (Doc. No. 41.)

---

[1] Plaintiff explains that his state-law claims "are wholly predicated upon" an ADA violation and concedes that, with respect to the present motion, the legal outcome of the federal and state claims must be identical. (Pl. Memo. ISO MSJ, at 17-18.)

[2] Plaintiff also claims that he visited the restaurant on August 4, 2007, but has no receipt because of the barriers he encountered while trying to gain access. (Oliver Decla. ISO MSJ ¶ 10.)

[3] Defendant had previously moved for summary judgment on September 24, 2007. (Doc. No. 26.) Defendant's amended motion was filed "without warning" in the sense that counsel did not first contact chambers to obtain a hearing date on the amended motion, pursuant to Civil Local Rule 7.1(b). In its Order granting plaintiff's request for a Rule 56(f) continuance, the Court denied as moot KFC's

The Webb Trust filed its notice of joinder in KFC's motion on January 7, 2008. (Doc. No. 42.)

KFC opposed plaintiff's motion for summary judgment on January 18, 2008. (Doc. No. 48.) That same day, the Webb Trust joined in KFC's opposition. (Doc. No. 47.)

Plaintiff filed a reply in support of his motion on January 25, 2008. (Doc. No. 50.) That same day, the Court granted plaintiff's request for a Rule 56(f) continuance to file his opposition to KFC's motion so that plaintiff's expert could conduct a second site inspection. (Doc. No. 50.)

Plaintiff filed his opposition to KFC's motion on March 7, 2008. (Doc. No. 51.) KFC filed its reply on March 14, 2008. (Doc. No. 52.) The Webb Trust joined in KFC's reply the same day. (Doc. No. 53.)

Although originally assigned to the Hon. John A. Houston, this action was reassigned to the Hon. Janis L. Sammartino on October 5, 2007.

Pursuant to the Court's Order granting the Rule 56(f) continuance, the Court set a date for oral argument after the completion of briefing on KFC's motion. However, the Court subsequently vacated the oral argument, finding the cross-motions appropriate for disposition on the papers without oral argument, pursuant to Civil Local Rule 7.1(d)(1).

**LEGAL STANDARD**

Summary judgment is properly granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." Id. at 325.

Once the moving party meets the requirements of Rule 56, the burden shifts to the party

---

first motion for summary judgment and declared that the amended motion would be the operative motion.

resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient. See Schneider v. TRW, Inc., 938 F.2d 986, 990-91 (9th Cir. 1991). A material fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Anderson, 477 U.S. at 248). When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] . . . ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

## DISCUSSION[4]

**A.    Americans with Disabilities Act**

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Prohibited discrimination includes "a failure to remove architectural barriers, . . . where such removal is readily achievable." Id. § 12182(b)(2)(A)(iv). As explained by the Ninth Circuit, the elements of a Title III discrimination claim are (1) plaintiff's "disability," (2) the defendant's private operation of a place of "public accommodation," and (3) defendant's denial of public accommodations because of plaintiff's

---

[4] KFC claims that it is entitled to summary judgment on a number of procedural issues—e.g., plaintiff's allegations of architectural barriers at the restaurant that did not appear in the complaint, plaintiff's failure to move for leave to amend the complaint to add these barriers, and plaintiff's failure to disclose certain barriers during discovery. KFC also objects that, although the Court granted plaintiff's request for a Rule 56(f) continuance so that plaintiff's expert could conduct a second site inspection of the remodeled restaurant, there is a question whether plaintiff's expert actually conducted that second inspection. In light of the relatively narrow merits questions presented by the cross-motions, the Court declines to interject itself into these procedural and factual disputes

1  disability. Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007). Where the plaintiff
2  alleges denial of public accommodations because of an architectural barrier, the plaintiff must
3  specifically show that (a) an ADA-prohibited architectural barrier exists and (b) the barrier's
4  removal is readily achievable. Pickern v. Pier 1 Imports (U.S.), Inc., 339 F. Supp. 2d 1081, 1085
5  (E.D. Cal. 2004), aff'd, 457 F.3d 963 (9th Cir. 2006); Parr v. L & L Drive-Inn Restaurant, 96 F.
6  Supp. 2d 1065, 1085 (D. Haw. 2000). For the first step of the analysis, the Court turns to the
7  Department of Justice's ADA Accessibility Guidelines ("ADAAG"). See 28 C.F.R. Pt. 36, App.
8  A (2007). Well-established precedent confirms that the ADAAG provide the standard for
9  determining whether a defendant has violated the ADA. See Hubbard v. 7-Eleven, Inc., 433 F.
10 Supp. 2d 1134, 1138 (S.D. Cal. 2006) (explaining that ADAAG "provide valuable guidance for
11 determining whether an existing facility contains architectural barriers" (internal quotations
12 omitted)); Wilson v. Pier 1 Imports (US), Inc., 439 F. Supp. 2d 1054, 1066 (E.D. Cal. 2006)
13 ("compliance with the ADAAG, and not another standard, constitutes compliance with the
14 ADAAG requirements"); accord Sanford v. Roseville Cycle, Inc., 2007 WL 512426, at *1 (E.D.
15 Cal. Feb. 12, 2007) (describing ADAAG as "the exclusive standards for judging compliance with
16 the ADA" and dismissing state-law building and vehicle codes as "irrelevant for ADA purposes").

17       Because the ADA only offers injunctive relief, an ADA claim is moot once the defendant
18 has remedied the alleged architectural barrier. 7-Eleven, Inc., 433 F. Supp. 2d at 1145; Parr, 96 F.
19 Supp. 2d at 1087; Indep. Living Res. v. Or. Arena Corp., 982 F. Supp. 698, 771 (D. Or. 1997).
20 Therefore, for purposes of adjudicating the pending motions concerning plaintiff's ADA claim, the
21 Court need not address any architectural barriers that KFC has already remedied.

22       At the time that plaintiff moved for summary judgment, plaintiff conceded that KFC had
23 remedied all but three of the architectural barriers originally encountered by plaintiff and/or
24 discovered by plaintiff's expert. (Pl. Memo. ISO MSJ, at 2, 10.) Plaintiff further conceded that, if
25 the remaining conditions did not violate the ADA, plaintiff would lose his Article III standing.
26 (Id. at 10.) Finally, in his opposition to KFC's amended motion, plaintiff also conceded that KFC
27 remedied one additional barrier by installing a recessed toilet paper dispenser in the men's
28 restroom that does not hinder plaintiff's wheelchair-to-toilet transfer. (Pl. Opp. to MSJ, at 5.)

1  Therefore, the only remaining issues are whether KFC has violated the ADA because (1) the
2  accessible seating inside the restaurant lacks a sufficiently large International Symbol of Access
3  ("ISA") symbol, and (2) the tow-away sign adjacent to the accessible parking spaces is the wrong
4  color and mounted too high.

5  　　　The Court finds that neither feature of KFC's restaurant amounts to an "architectural
6  barrier" as defined by the ADAAG.  Concerning the ISA signage on accessible seating, the Court
7  begins by acknowledging the seemingly conflicting holdings from the Eastern District of
8  California on this issue.  In Wilson v. Haria & Gogri Corp., the court held that the absence of
9  signage designating accessible seating in a restaurant violated the ADAAG, as a matter of law.
10 479 F. Supp. 2d 1127, 1134-35 (E.D. Cal. 2007).  Previously, another department in the same
11 district held to the contrary that "[t]he ADAAG specifies which elements of a building require ISA
12 signs and it does not require accessible seating to be labeled."  Sanford v. Del Taco, Inc., 2006 WL
13 2669351, at *3 (E.D. Cal. Sept. 18, 2006).  Each opinion analyzes the issue in a short paragraph.
14 The Court notes, however, that Wilson referenced a section of the ADAAG pertaining to signs
15 "suspended or projected overhead."  See 479 F. Supp. 2d at 1135 (citing ADAAG § 4.30.3).
16 Elsewhere, Wilson referred to these signs as "placards" which customers allegedly stole on
17 multiple occasions.  Id. at 1131.  By contrast, the signs in Sanford were "located on the
18 restaurant's tables."  2006 WL 2669351, at *3 (emphasis added).  Here, the signs in KFC's
19 restaurant were not "suspended or projected overhead" in a way that made them susceptible to
20 removal by customers.  Instead, they were "embedded" into the tables themselves.  (Elmer Decla.
21 ISO Motion ¶¶ 42, 44.)  Therefore, the Court is inclined to find that KFC's signs more closely
22 resembled the design at issue in Sanford than in Wilson.  This factual similarity would indicate
23 that the Court should follow Sanford and hold that KFC did not violate the ADAAG.  Nonetheless,
24 the Court finds sufficient ambiguity in these opinions to analyze the ADAAG afresh.

25 　　　Plaintiff argues that the ADAAG does require ISA designation of accessible seating which
26 must appear in a sufficiently large size.  Plaintiff begins with § 4.30.4, which states that pictorial
27 symbol signs (or "pictograms") "shall be 6 in . . . minimum in height."  However, this provision on
28 its own is unavailing to plaintiff, because "[s]ignage required to be accessible by 4.1 shall comply

1  with the applicable provisions of 4.30." Id. § 4.30.1.  Therefore, plaintiff must establish that
2  seating signs fall within the purview of § 4.1.  To satisfy this requirement, plaintiff points to §
3  4.1.2(7), referencing "[e]lements and spaces of accessible facilities which shall be identified by the
4  International Symbol of Accessibility."  The ADAAG defines "element" as "[a]n architectural or
5  mechanical component of a building, facility, space, or site, e.g., telephone, curb, ramp, door,
6  drinking fountain, seating, or water closet." Id. § 3.5 (emphasis added).  Plaintiff further argues
7  that seating falls within the definition of "facility"—"all or any portion of buildings, structures,
8  site improvements, complexes, equipment, roads, walks, passageways, parking lots, or other real
9  or personal property located on a site"—and "space"—"[a] definable area, e.g., room, toilet room,
10 hall, assembly area, entrance, storage room, alcove, courtyard, or lobby."  Because plaintiff argues
11 that seating qualifies as an element, facility, and/or space within the meaning of the ADAAG, §
12 4.1.2(7) requires that accessible seating have an ISA sign to satisfy the minimum height
13 requirements.

14       Plaintiff also cites § 4.1.3(16)(b), requiring that "signs which provide direction to or
15 information about functional spaces of the building" shall comply with various sub-sections of §
16 4.30.  Plaintiff argues that seating is a "functional space" of KFC's restaurant, although there is no
17 specific definition of this phrase in § 3.5.

18       The Court is not persuaded by plaintiff's interpretation of the ADAAG but instead finds
19 persuasive defendant's contrary interpretation.  To ensure that the Court's analysis is as clear as
20 possible, the Court reprints the entirety of § 4.1.2(7) below:

21    Building Signage.  Signs which designate permanent rooms and spaces shall
    comply with 4.30.1, 4.30.4, 4.30.5, and 4.30.6.  Other signs which provide direction
22    to, or information about, functional spaces of the building shall comply with 4.30.1,
    4.30.2, 4.30.3, and 4.30.5.  Elements and spaces of accessible facilities which shall
23    be identified by the International Symbol of Accessibility and which shall comply
    with 4.30.7 are:
24
25    (a)    Parking spaces designated as reserved for individuals with disabilities;
    (b)    Accessible passenger loading zones;
    (c)    Accessible entrances when not all are accessible (inaccessible entrances
26        shall have directional signage to indicate the route to the nearest accessible
        entrance);
27    (d)    Accessible toilet and bathing facilities when not all are accessible.

28 Read in context, the ADAAG do not require KFC to use ISA signs on its accessible seating.  The

1  third sentence of § 4.1.2(7) specifically enumerates the "elements and space" which must have
2  ISA signage: parking spaces, loading zones, entrances, and toilet/bathing facilities. Seating does
3  not fall within any of these categories.

4  Therefore, the only remaining question is whether's KFC voluntary[5] decision to include
5  ISA signage on its accessible seating triggered the obligation to comply with the minimum height
6  requirement of § 4.30.4. The Court notes that only the first sentence of § 4.1.2(7), concerning
7  "[s]igns which designate permanent rooms and spaces", requires compliance with § 4.30.4. The
8  dispositive question is whether seating falls within the definition of "spaces". The Court finds that
9  it does not. "Seating" is enumerated as an example in the definition of "element," i.e., "an
10 architectural or mechanical component of a . . . space[.]" Id. § 3.5. The meaning of "elements"
11 and "spaces" cannot be co-extensive, because both terms appear in the third sentence of § 4.1.2(7).
12 The Court construes regulations to avoid interpreting any language as surplusage. United States
13 v. Rangel-Gonzales, 617 F.2d 529, 533 (9th Cir. 1980); Hernandez v. Gutierrez, 114 Cal. App. 4th
14 168, 172-73 (Cal. Ct. App. 2003). Because "seating" does not fall within the definition of
15 "spaces," the ISA signs on KFC's accessible seating do not fall within the purview of the first
16 sentence of § 4.1.2(7) and need not comply with the minimum height requirements of § 4.30.4.

17 Section 4.1.3(16)(a) is worded the same way as the first sentence of § 4.1.2(7) and does not
18 require separate analysis. Section 4.1.3(16)(b) does not require compliance with 4.30.4.
19 Therefore, nothing in § 4.1.3(16) is availing to plaintiff in opposing summary judgment as to the
20 ISA signage that KFC has placed on the accessible seating in its restaurant.

21 Concerning the tow-away sign in the parking lot, the analysis is simpler, because plaintiff
22 does not cite a provision of the ADAAG but instead turns to state-law provisions, e.g., California's
23 Manual of Uniform Traffic Control Devices ("MUTCD") and the Imperial Beach Municipal Code.
24 Again, however, state-law codes and regulations "are irrelevant for ADA purposes." Roseville
25 Cycle, Inc., 2007 WL 512426 at *1. Plaintiff attempts to make these California authorities

26

---

27  [5] The Court means "voluntary" in the sense that the ADAAG did not require KFC to include
ISA signage on the accessible seating. The Court declines to address the question whether some
28  provision of California law—e.g., the provision of the California Building Code cited in plaintiff's
motion papers—may require the ISA signage.

1 relevant by referring to an ADA regulatory provision concerning the effect of other laws: "This
2 part [the ADA] does not invalidate or limit the remedies, rights, and procedures of any other
3 Federal laws, or State or local laws (including State common law) that provide greater or equal
4 protection for the rights of individuals with disabilities or individuals associated with them." 28
5 C.F.R. § 36.103(c) (2008). This Court rejects this argument and agrees with other courts that have
6 declined to construe this regulation as an incorporation of state-law standards into the substance of
7 the ADA itself. Martinez v. Home Depot USA, Inc., 2007 WL 926808, at *3 (E.D. Cal. Mar. 27,
8 2007); Access 4 All, Inc. v. Atl. Hotel Condo. Ass'n, Inc., 2005 WL 5643878, at *12 n.15 (S.D.
9 Fla. Nov. 23, 2005); Thomas & King, Inc. v. City of Phoenix, 208 Ariz. 203, 207 (Ariz. Ct. App.
10 2004).

11      For the reasons stated herein, the conditions not modified by KFC fail to qualify as
12 "architectural barriers" within the meaning of the ADAAG. Therefore, plaintiff is not entitled to
13 summary judgment on these alleged barriers under the ADA or the state-law claims predicated on
14 the ADA. By plaintiff's own concession, (1) all other alleged ADA violations are now moot
15 because KFC has since remedied those alleged violations, and (2) plaintiff has lost his Article III
16 standing. Under these circumstances, defendant is entitled to dismissal of plaintiff's ADA claim.

17 **B.**     **Supplemental Jurisdiction**

18      28 U.S.C. § 1367(c) gives a district court discretion to decline supplemental jurisdiction
19 under the following circumstances:

> (1)    the claim raises a novel or complex issue of State law,
> (2)    the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3)    the district court has dismissed all claims over which it has original jurisdiction, or
> (4)    in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

24 KFC urges the Court to decline supplemental jurisdiction over plaintiff's state-law claims in this
25 case. KFC points out that many other courts within this district have declined supplemental
26 jurisdiction in ADA cases. (See Def. Memo. ISO MSJ, at 14 n.12 (citing cases).) The common
27 basis for declining jurisdiction is a conflict between the Ninth Circuit and the California Court of
28 Appeal as to whether a plaintiff must prove discriminatory intent in order to recover damages

1  under the Unruh Act.  Compare Lentini v. Cal. Ctr. for the Arts, 370 F.3d 837, 846-47 (9th Cir.
2  2004) with Gunther v. Lin, 144 Cal. App. 4th 223, 252-57 (Cal. Ct. App. 2006).  This conflict in
3  precedent is considered a novel and complex issue of state law.  E.g., Oliver v. GMRI, Inc., 2007
4  WL 4144995, at *3 (S.D. Cal. Nov. 19, 2007) (Gonzalez, C.J.).

   As the Ninth Circuit has certified these questions to the California Supreme Court, see
Munson v. Del Taco, Inc., 522 F.3d 997, 999 (9th Cir. Apr. 14, 2008), the mere presence of the
question in this case would not warrant, on its own, the Court's refusal of supplemental
jurisdiction.  The Court could simply stay the case and await the California Supreme COurts' s
decision. However, in combination with other factors, the Court exercises its discretion to decline
supplemental jurisdiction here.  Specifically, the Court dismissed supra the ADA claim, which
provided the only basis for original jurisdiction. Furthermore, the state-law claims substantially
predominate over the ADA claim.  Because there is no triable question of fact concerning the
unremedied conditions at KFC's restaurant, plaintiff cannot obtain injunctive relief, which is the
only remedy available under the ADA.  Plaintiff's entitlement to monetary damages (if any) arises
exclusively under state law.[6]

## CONCLUSION

As a matter of law, plaintiff has not established that any of the present conditions at KFC's restaurant are "architectural barriers".  Therefore, the Court **DENIES** plaintiff's motion for summary judgment.

Because the accessible seating signage and tow-away signage do not violate the ADA, the Court **GRANTS IN PART** defendant's motion for summary judgment as to those two issues. Because KFC has rendered moot all of plaintiff's remaining ADA claims, the Court **DISMISSES** plaintiff's ADA claim without addressing whether KFC was in violation of the ADA prior to its voluntary modifications of the restaurant.

In light of the dismissal of plaintiff's ADA claim, the predominance of plaintiff's state-law claims for money damages, and the novelty and complexity of the proof requirements for

---

[6] The Court notes that plaintiff offers nothing in opposition to defendant's arguments concerning supplemental jurisdiction.

1  obtaining Unruh Act damages, the Court, in its discretion, **DECLINES** supplemental jurisdiction
2  over plaintiff's state-law causes of action.  The Court **DISMISSES** those claims **WITHOUT**
3  **PREJUDICE** to plaintiff refiling those claims in state court.
4      This Order **CONCLUDES** the litigation in this case.
5      IT IS SO ORDERED.

7  DATED: July 14, 2008

8  Honorable Janis L. Sammartino
9  United States District Judge